The 4th District Appellate Court of the State of Illinois has reconvened. The Honorable Peter C. Kavanaugh presiding. Thank you. We'll next call 4-23-0789. N. Ray S.B., a minor, people of the State of Illinois, appellee versus Scott B. Appellant. Would counsel for the appellant please state your name for the record? Austin Wright. And counsel for the appellee? Courtney O'Connor. Thank you. Mr. Wright, you may proceed. Thank you. Good afternoon, your honors. Good afternoon, counsel. May it please the court. Adequate notice of the charges, the right to presence at the trial of those charges, and proof of the elements of each charge beyond a reasonable doubt. These concepts are so elementary and they are so fundamental to our system of justice in this country that they are practically day one material in any course on criminal procedure. But incredibly, they were apparently not even an afterthought in this case where the state opted to put an 11-year-old child on trial. The state filed a delinquency petition that did not specifically apprise my client of all of the offenses he was accused of having committed. And then at the behest of the state, the court proceeded to a trial in his absence without ever warning him that that was a possibility. And then at the trial held in my client's absence, the state obtained two felony convictions despite not having proven the elements of each offense. For these reasons, these fundamental failings in the proceedings below, I am asking this court to reverse both of SB's convictions. Turning first to the insufficiency of the evidence, the state charged in count two that SB obtained or exerted control over a 2011 Honda owned by Michael Norris and used, concealed, or abandoned that Honda in a manner that was probably was probable to deprive Mr. Norris thereof. The trouble is the state wholly failed to prove this charge. That is, there was no proof that SB took any action in relation to the van. The state hangs its hat on Allison Nelson's SB came to her home in possession of keys and had referenced potentially stealing cars in the past, but noticeably absent from her testimony were any facts of which she had witnessed or had personal knowledge of showing that SB had actually stolen a car, let alone one owned by Michael Norris. The state asked her at one point, point blank, did SB mentioned to you that they had actually taken the vehicle or just taken the car keys? And she said, no, he didn't. And that's all consistent with her testimony that SB couldn't even direct her to a specific location of the van. They were just driving around without a heading and Quincy. All this goes to show that SB never exerted control over the van. He never abandoned the van. And so the state's evidence was clearly insufficient in that respect, and this court should reverse that conviction. And the same result is necessary in respect to count three. This is the charge where the state alleged that SB obtained control over keys and fobs that belonged to Michael Norris and Jason shoot, knowing them to have been stolen and then intended to deprive them thereof. So regardless of whether this is actually a charge under subsection a one of the theft statute or a four of the theft statute, the state failed to prove the charge where did not own, did not prove specific ownership of the keys and or fobs, and they didn't prove the applicability of joinder. The state says that it, it proved that at least someone else owned the keys, someone other than SB, but that's insufficient. The state has to prove the items were stolen from the owner. And this really, I don't want to belabor this point because really it boils down to something so simple. The state could have had any one of the three witnesses identify the keys and they didn't do that. And the text of the statute makes clear that it has to prove specific, the state has to prove specific ownership. It repeatedly references the owner, a definite article preceding a noun that has a particularizing effect. And so that failure alone requires reversal of the conviction. However, the state also failed to prove that the joinder statute applies as a general rule. Separate offenses are charged as separate offenses. Some theft related charges can be aggregated, but those series of acts either need to be part of a single intention of design or relating to the state. And when the state alleges that or has to allege it, it becomes an element of the offense. And there's no doubting that the state did not do so in this case. So once again, the state failed to prove count three and this court should reverse that conviction as well. But if this court disagrees with me, if it finds that the evidence is sufficient, this court should nonetheless reverse those convictions because there was absolutely no warning to my client that trial could proceed in his absence. While the juvenile court act allows for the possibility of trial in the minor's absence, it requires the state to first affirmatively prove their substantial evidence of that absence is willful. This provision has been interpreted just as its counterpart in the code of criminal procedure has been to require a showing of three cases of willfulness. One, the defendant was told of the trial date. Two, the court tells him that the trial can proceed if he doesn't make it on that date. And three, he doesn't actually show up. Applied here, this is an open and shut case. The court never told my client that the trial could proceed in his absence. The state's references to a first appearance summons are in no way, shape, or form sufficient. Mr. Wright, could I ask you about the standard of review on that? You and the state differ on this issue. You say it's de novo. The state in its brief says that it's an abuse of discretion. Citing people V. Johnson, they say trial court's decision to proceed with the trial in absentia will not be reversed absent an abuse of discretion. Is there something missing from that particular statement of law there? In other words, does it assume that the respondent has already been advised that he could be tried in absentia? Yeah, the court's ability to exercise discretion in that circumstance presupposes that the state has made the requisite showing beforehand that there was proper admonishment and then a failure to appear after the fact. The court has no discretion to proceed where there's been no showing that the client was or was not admonished. So I think what the state leaves out is the necessary proceeding facts. Okay, thank you. Of course. And so that again is another reason for this court to reverse both convictions. That of course would be for a new trial. And then if this court disagrees with me as to both the sufficiency of the evidence and the insufficiency of the in absentia admonishments, then it also should reverse count three in remand for a new trial. This is the charge that as discussed in the briefing was quite muddled. It's not clear whether it was charged under subsection A1 of the theft statute or A4 of the theft statute. And that necessarily each theft offense relates to differing manners of how the accused comes into possession of stolen property when they come into possession of stolen property. And so the difference there is critical. And this only becomes more the difference between A1 and A4 is the difference between whether Joinder does or does not apply. And we know from our Supreme Court's decision in Raul that a failure to plead and prove Joinder renders the charging instrument insufficient. And so the proper remedy for that in this case, like I said, would be a remand for a new trial on that count simply because the operation of the charging instrument approach in this case itself would be muddled. We don't know what offense was actually articulated in the delinquency petition in Walton. It was clearly A4. And so we don't know from which charge defense to proceed to see if there was a broad outline of an uncharged offense. And so as I said, we would ask that if this is the issue the court reaches, we would ask for a new trial on count three. And then finally and briefly, if nothing else, this court must reverse both felony convictions or reduce them to misdemeanors because the value of the property in excess of $500 is an element of the offense. And here there was no evidence establishing the fair market value of the van on the date it was stolen or the keys and or key fobs. Now the statement's brief said it's reasonable to infer that the circuit court took judicial notice of the value. But even if that were true, it's beside the point. Judicial notice either below or in this court would be highly inappropriate because these values are not something that's universally known. This is not analogous to the case, the Tessone case where there was a semi-tractor trailer and a lot of merchandise. Counsel, the first district last May in Henry D.W. held that in a juvenile delinquency proceeding, that a juvenile must receive admonitions from the trial court that if he fails to appear at trial, then he could be tried in absentia. And if he is not given those admonitions, then the court errs by trying in absentia. Did you cite D.W. in your brief? Correct. And for that statement of the law? D.W. cited to the Supreme Court's People v. Smith where it articulated the three-step test that had developed in the appellate court after I believe it was 1979 when the absence of the defendant provision was added to that code. And so while there's some, well there's not a lot, there's only Westlaw returns only two cases. Is this a long way of answering my question with a yes? Could you repeat the question then? I apologize. Did you cite D.W. in your brief? Oh yes. Okay, you may continue. And so like I said, there's no universally established value for keys and or key fobs that belong to a 2011 van. There's no even universally established scrap value for a van. Much like commodities, the prices of scrap metal go up and down every day. And so where there was evidence establishing even that on the date of the theft, the state failed to meet its burden to establish that the property was valued at over $500. And this court, if nothing else, should reduce those convictions to misdemeanors. And so in closing we would ask in this specific order that this court either outright reverse the convictions, reverse the convictions and remand for a new trial, or reduce the classifications to misdemeanors. Thank you. Thank you, Mr. Wright. Ms. O'Connor. Good afternoon. May it please the court, counsel, the state in turn would ask this court to affirm your response to convictions. As to the first argument regarding count one, the state had approved that defendant obtained or exceeded control of a 2011 Honda minivan and used concealed and or abandoned said vehicle knowing it would deprive the owner of the permanent use. In proving this, the state used testimony from Allison Nelson, which the state would know that it is the duty of the court to weigh the credibility of the witnesses. And this court does not typically reweigh that credibility. However, with the testimony of Allison Nelson, she testified that on February 27, 2023, the defendant came to her home with two sets of vehicles. And he asked her for a ride to the Honda minivan. And what she had a set of keys for. And he stated to her to testify that he stated that he broke into the Honda and took the keys. And he specifically stated to her that he obtained the keys to the minivan by breaking into it. Specifically informing her that he had previously stolen vehicles. State further proved this testimony by the officer Mark Landis, who stated that after pulling over Miss Nelson's vehicle. Oh, sorry. He approached the respondent who admitted to the officer that he had sets of keys to the vehicles. Officer in turn took these keys to his watch commander and then determined what vehicles these keys went to based on the cases that officer was investigating. He contacted the owners of those vehicles and those two cases involved stolen vehicles, which were a 2021 Toyota RAV4 and a silver Honda minivan. The state would argue that at a minimum, based on the evidence and any of the reasonable inferences taken by the court, the state proved the defendant occurred unauthorized control of the minivan by breaking into it and stealing the keys. Um, by the way, yes, Mr. Wright, uh, if he incited VW in his brief, VW being a case from the first district last May, but essentially he said that, uh, the trial court has to specifically admonish a juvenile delinquent about a forthcoming trial and that he might be tried in absentia or doesn't appear. And, uh, Mr. Wright said he did believe me, did my understanding correct that in your brief on behalf of the state, you don't discuss VW at all. Um, you're correct, your honor. Um, you're fully correct on that. And I realized that, um, although I did not cite to it, I did, um, my argument did involve that analysis, uh, but you're correct. I did not cite to it. In order to, uh, affirm the delinquency adjudication, this case, would we not have to conclude that DW was wrongly decided? Um, could you repeat that? Sorry. Yes. Uh, in order to affirm what happened in this case, delinquency adjudication of this juvenile, wouldn't we have to conclude that the first district's decision in DW was wrongly decided? Um, you essentially would, your honor. Pardon? You essentially would. Yes. Um, well, um, uh, you didn't brief that, but I'll give you an opportunity now to tell us why you reached that conclusion. Um, I apologize again. I did, um, not include the citation in my brief. However, I did argue that, um, with those three requirements, the state, the defendant was made aware of the trial date on his previous hearing date. He was told him the next date was going to be his petition hearing date. His own attorney said that he could not get ahold of him or communicate with him since that previous trial date. And he had no idea where he was essentially. Um, and then that based on his... Are you going to be tried in your absence? I understand your honor. Yes. And he wasn't told that, was he? He was not told that open court, uh, the courts have said that we can't infer adult criminals understanding that concept. If they're not told that it seems to me that there's less of a basis to infer that from 12 year old juvenile delinquents, that they should somehow know this without being explicitly told by the court. What about that? Um, I understand your honor. Yes. Um, if we conclude that, uh, the trial court here by not affirmatively warming, warning him that he could be tried in his absence and he doesn't appear, then we don't have to address any other aspect of, uh, this case on appeal, do we? The appropriate force be simply to reverse and remand for further proceedings. Um, that would be more than likely correct your honor. Um, and if that's the way this is going to go, I understand. And, um, the state would just, it relies on its briefs for rest arguments and issues then. Okay. Okay. If that's all, thank you. No further questions then. Rebuttal. Uh, yeah, sure. I would just like to briefly address justice Stigman's question. Um, no, the, I don't believe that the appropriate course would be for this court to simply remand for a new trial. If it found an in absentia error, it would still have to proceed to the next step of addressing the arguments and argument one about the sufficiency of the evidence. And then related to that, I would, I guess I would simply just add that I am not, as the state suggests, asking this court to reweigh the credibility of whether or not Ms. Nelson was or was not testimony, but we just have to recognize what she did and did not testify to. And her testimony was simply that an 11 year old child came to her house in possession of keys. She did not identify the keys as belonging to a van. Neither did Mr. Norris's testimony. Neither did officer Landis. None of this occurring despite the fact that officer Landis took pictures of the keys. After the fact we see that in the police report attached to the social investigation report, he took two or three photos of these keys. So if they actually were the ones that belong to the van, it would have been relatively easy. And then finally, again, there was no testimony from Ms. Nelson about actions taken in relation to moving the van. And so on those points, I would rest unless the court has any specific questions for me. I see no questions. Thank you, counsel. Thank you both. Court will take this matter under advisement and now adjourns.